**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES R. HARRIS, ) | |
| ) | CASE NO.    1:07-cv-00877 |
| Plaintiff, ) | |
| ) | JUDGE CHRISTOPHER A. BOYKO |
| v. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff James R. Harris ("Harris") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Harris's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends the Court AFFIRM the final decision of the Commissioner.

**I.  Procedural History**

On January 29, 2004, Harris filed an application for SSI alleging a disability onset date of January 21, 2000 and claiming that he was disabled due to arthritis, epilepsy, and injuries to his back and knee.  His application was denied initially and upon reconsideration.  Harris timely requested an administrative hearing.

On February 24, 2006, Administrative Law Judge James S. Carletti ("ALJ") held a hearing during which Harris, represented by counsel, testified.  William Temple, M.D., testified as the Medical Expert ("ME") and Nelly Katsell testified as the Vocational Expert ("VE").  On August 24, 2006, the ALJ found Harris was able to perform his past relevant work and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Harris filed an appeal to this Court.

On appeal, Harris claims the ALJ erred by: (1) finding that Harris had an RFC for light work; and (2) failing to give proper weight to the opinions of his treating physicians.

**II.  Evidence**

*Personal and Vocational Evidence*

Born on January 8, 1951 and age fifty-five (55) at the time of his administrative hearing, Harris is "person of advanced age."  *See* 20 C.F.R. § 416.963(e).  Harris has completed only the ninth grade and has past relevant work as a furniture salesman.

*Medical Evidence*

On November 1, 2003, John H. Nickels, M.D., reported that he had been treating Harris for lower back pain since April 20, 1999.  (Tr. 146.)  A physical examination revealed Harris had difficulty rising from a seated and a decreased lumbar range of motion reduced by 25% in

2

flexion and extension. *Id*. The examination also revealed an inability to squat, positive straight leg raises at 45 degrees bilaterally, and significant paravertebral spasms throughout his lumbosacral area. *Id*. Harris was able to perform heel and toe walks satisfactorily. *Id*. Dr. Nickels recommended a handicap sticker for driving and the use of a cane to stabilize Harris's gait. (Tr. 146-47.) Harris rated his pain as ranging from seven to ten where ten is the worst pain. (Tr. 147.) Dr. Nickels diagnosed lumbar radiculopathy, which he opined was both permanent and disabling. *Id*.

On November 12, 2003, Willa Caldwell, M.D., a State Agency medical consultant, reviewed the evidence of record and found that Harris's limitations were consistent with an ability to perform light work.[1] (Tr. 148-52.) Specifically, she found that Harris could lift and/or carry twenty pounds occasionally and ten pounds frequently. (Tr. 149.) She further found that Harris could sit, stand and/or walk for six hours in an eight-hour workday with unlimited ability to push or pull. *Id*. She also found that Harris does not have any manipulative, visual, communicative, or environmental limitations. (Tr. 150-51.)

On March 16, 2004, Dr. Nickels indicated that he had seen Harris on four occasions since his November 1, 2003 report. (Tr. 176.) Dr. Nickels opined that Harris is unable to perform "any significant bending, lifting, pushing or pulling activities, and ... has been completely and totally disabled and unable to work." *Id*. Dr. Nickels indicated that Harris's treatment was limited to medications because Harris was uninsured and could not afford to obtain lumbar

---

[1] Light work involves lifting no more than 20 pounds; or it may involve very little lifting, but require a significant amount of walking or standing; or it may involve some pushing or pulling of arm or leg controls, which requires greater exertion than in sedentary work. 20 C.F.R. § 416.967(b).

MRIs, neurology consultations, EMGs, nerve block injections, or physical therapy. (Tr. 177.)

On April 27, 2004, Dr. Nickels completed a Medical Source Statement indicating that Harris could lift 20 pounds occasionally and 10 pounds frequently and could stand, walk, and/or sit for only one hour in an eight-hour workday. (Tr. 178-79.) He also opined that Harris needed to elevate his feet while sitting. *Id*. Further, Harris could rarely or never climb, stoop, crouch, kneel, or crawl and could only occasionally balance. *Id*.

On April 29, 2004, State Agency physician Gerald W. Klyop, M.D., completed a Physical RFC Assessment. (Tr. 207-10.) Dr. Klyop made the following findings: Harris could lift 20 pounds occasionally and 10 pounds frequently; he can sit, stand, or walk for six hours in an eight-hour workday; he has an unlimited ability to push or pull within the above weight restrictions; he can never balance or climb ladders but can climb stairs, stoop, crouch, and crawl occasionally; he needs to avoid all exposure to hazards; and he has no manipulative, visual, or communicative limitations. (Tr. 207-10.)

On July 27, 2004, Dr. Nickels indicated that Harris continued to be disabled despite medication management and indicated that lack of insurance prevented him from treating Harris more aggressively with lumbar MRIs, physical therapy, nerve block injections, and a neurological evaluation. (Tr. 212-13.)

On August 4, 2004, Gary E. DeMuth, M.D., reviewed the evidence of record and affirmed the April 29, 2004 assessment of Dr. Klyop. (Tr. 210.)

Harris saw Dr. Nickels repeatedly between September 2004 and February 2006 concerning his back pain. (Tr. 225-40, 243-45, 293.) On February 1, 2005, an MRI revealed multilevel disc herniations and foraminal narrowing. (Tr. 233.)

4

In March of 2005, Thomas Wagner, D.O., indicated that Harris was a medication dependent person.  (Tr. 220.)  Dr. Wagner found that Harris can only sit, stand/walk for one hour in an eight-hour workday.  (Tr. 221.)  He noted that Harris can lift 11-20 pounds both frequently and occasionally.  *Id*.

On January 31, 2006, Dr. Wagner completed a medical Source Statement that included the following findings.  (Tr. 295-96.)  Harris can lift 5-15 pounds occasionally and 5 pounds frequently, stand/walk for one to two hours in an eight-hour workday, sit for six hours in an eight hour workday without needing to elevate his legs, and could rarely or never climb, balance, stoop, crouch, kneel, or crawl.  *Id*.  Dr. Wagner also opined that Harris can occasionally reach, handle, feel, see, hear, speak, and manipulate his bands but could rarely or never push or pull.  *Id*.  Finally, Dr. Wagner opined that Harris's seizure disorder would create environmental restrictions but would not prevent Harris from being exposed to noise or dust.  (Tr. 296.)

After Harris's administrative hearing, held on February 24, 2006, Harris was examined by Issam Al-Turk, M.D., at the ALJ's request.  (Tr. 311-19.)  Dr. Al-Turk found that Harris's limitations had no impact on his ability to sit, stand, walk, push, or pull.  (Tr. 311-320A.)  He further found that Harris had normal range of motion and no visual or communicative limitations.  *Id*.  Dr. Al-Turk limited Harris to only occasional climbing and limited exposure to hazards.  *Id*.  Dr. Al-Turk indicated that he did not have any information about a lower back MRI from May 2005.  (Tr. 311.)

*Hearing Testimony*

At the hearing, Harris testified as follows.  He has not been employed since 1992 due primarily to his back problems.  (Tr. 406.)  He has experienced petite seizures for the past thirty-

5

five (35) years and takes Phenobarbital and Chemtrol to help control the problem.  (Tr. 407.)  The seizures occur once or twice a year.  (Tr. 408.)  He takes numerous medications to treat his back pain and spasms.  *Id*.  He has been seeing Dr. Nickels for his back pain.  (Tr. 409.)  He stated that his doctors never recommended surgery, that he has never received any physical therapy or nerve injections, and that his pain has been treated exclusively with medication.  (Tr. 412.)  He had been to the hospital a couple of times in the past few months for heart problems and has been experiencing chest pain and shortness of breath.  (Tr. 411, 414.)

Harris testified that standing can trigger the pain in his back and that he could stand for one to two hours at best.  (Tr. 412-13.)  He also stated that he can sit for three to four hours without interruption but then needs to walk around.  (Tr. 413.)  He opined that he could lift up to twenty-five pounds.  (Tr. 413.)

The ME testified that he had reviewed the evidence of record.  (Tr. 415.)  When asked if Harris impairments, either singly or in combination, met or equaled a listed impairment, the ME responded that there was insufficient data in the administrative record to reach an opinion regarding Harris's back problem.  (Tr. 415-16.)  The ME explained that while the record is extensive, it is "rather unrevealing."  (Tr. 416.)  He noted that almost all of Harris evaluations were performed by a nurse practitioner.  *Id*.  Furthermore, the ME opined that nothing in the record substantiates a diagnosis of lumbar radiculopathy.  *Id*.  Also, while an MRI described multi-level disc disease, it did not mention any root compromise.  *Id*.  The ME also pointed out that while two records discuss pain in Harris's knees, he found no examination, x-ray, or MRI of Harris's knees in the record.  *Id*.  Therefore, the ME recommended a consultative examination be conducted by an orthopedist and also undergo a neurological examination.  (Tr. 417.)

The VE testified that Harris past jobs as a furniture salesman and sales attendant are considered to be semi-skilled, light exertional work according to the Dictionary of Occupational Titles. (Tr. 419.)  The ALJ asked the VE whether Harris could perform any of his past work if he were limited to light work with no exposure to heights, automotive equipment, or dangerous machinery. (Tr. 420.)  The VE responded that Harris could perform his past work as a furniture salesperson and as a sales attendant. *Id*.

### III.  Standard for Disability

A claimant is entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[2]

---

[2] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Harris established medically determinable, severe impairments, due to multilevel disc herniations, foraminal narrowing and degenerative disc disease, and a history of petit mal seizures, but his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Harris is able to perform his past work activities and has a RFC for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Harris is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Harris claims the ALJ erred by: (1) finding that Harris had an RFC for light work; and (2) failing to give proper weight to the opinions of his treating physicians.  Each will be discussed in

8

turn.

*Treating Physicians*

Harris argues that the ALJ failed to give proper weight to the opinions of his treating physicians because their opinions are "uncontradicted by competent medical evidence." (Pl.'s Br. at 13-14.)

The opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). "The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). "However, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citations omitted), *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

The ALJ is not required to credit a treating physician's opinion that is inconsistent with the physician's previous opinion or with the medical evidence. *See Bogle*, 998 F.2d at 347-48. Nor is the ALJ bound by the opinion of a treating physician who indicates that the claimant is disabled, when there is substantive evidence to the contrary. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1998) (*per curiam*). The ALJ need not credit the opinion of a physician on a matter that is not within the physician's field of expertise. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th

Cir. 1991) (*per curiam*).

Here, the ALJ meticulously stated his reasons for rejecting the opinions of Dr. Nickels and Dr. Wagner. (Tr. 21-22.) With respect to Dr. Nickels, the ALJ found as follows: Dr. Nickels's opinions were internally inconsistent; he failed to make any referrals despite the severity of his findings; his diagnoses were inconsistent with objective medical evidence – namely the MRI from February 2005; Dr. Nickels's findings as to the severity of limitations was inconsistent with other substantial evidence of record, including Harris's statements; and that an opinion as to whether a claimant is disabled is not a medical opinion because it is an issue reserved for the Commissioner. (Tr. 22.) With respect to Dr. Wagner, the ALJ found as follows: Dr. Wagner's findings were inconsistent with his examination of Harris and he formed his initial opinion after only two or three visits; he failed to make any referrals despite the alleged severity of Harris's impairments; he saw Harris primarily for yearly check-ups and seasonal problems such as nasal congestion; other substantial evidence of record, such as MRIs, and Dr. Wagner's own progress notes do not substantiate the severity of Harris's impairments; and that an opinion as to whether a claimant is disabled is not a medical opinion because it is an issue reserved for the Commissioner. (Tr. 22.)

Harris argues that the reasons proffered by the ALJ for rejecting Dr. Nickels's opinions are "neither legitimate nor accurate."[3] (Pl.'s Br. at 14.) Harris argues that Dr. Nickels clearly

---

[3] Harris fails to offer any argument attempting to explain why the reasons given by the ALJ for rejecting the opinions of Dr. Wagner were erroneous. Therefore, Harris's perfunctory argument that the ALJ erred by rejecting Dr. Wagner's opinion is deemed waived, as it is not the Court's function to search the administrative record for evidence to support Harris's argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most

stated that he did not treat Harris more aggressively or give referrals to specialists because Harris was uninsured and unable to afford such treatment. *Id*. at 15. Harris also argues that the relation of the diagnosis of radiculopathy to the MRI results is not clearly explained by either the ME or Dr. Nickels. *Id*. Finally, Harris avers that his statement that he could lift twenty pounds was not incongruous with Dr. Nickels's evaluation. *Id*.

Assuming, *arguendo*, that Harris is correct on all three of these points, they are not sufficient grounds for vacating or reversing the ALJ's decision. Harris has failed to address the other reasons proffered by the ALJ for rejecting Dr. Nickels' opinion. Additionally, the ME clearly explained that there is no evidence of record to support a diagnosis of lumbar radiculopathy and that the MRI does not describe any nerve root compromise.[4] (Tr. 416.) The ME concluded that the medical records were "rather unrevealing" and recommended a consultative examination, which the ALJ obtained. Finally, the ALJ opined that the severity of Harris's limitations found by Dr. Nickels was inconsistent with other substantial evidence of record, which included Harris's statement concerning his ability to lift but was not confined exclusively to that statement. In fact, Harris testified that he has the ability to sit for three to four hours at a time before he needed to stand and walk around – a significantly longer amount than the one hour of sitting in an eight-hour day as found by Dr. Nickels. (Tr. 178-79; 413.) Harris's argument appears to invite the Court to conduct its own evaluation of the evidence and reach a different conclusion than the ALJ. However, this Court's review is limited to determining

---

skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

[4] Radiculopathy is a disease of the nerve roots and nerves. *See Dorland's Illustrated Medical Dictionary* (30th ed., 2003.)

whether there is substantial evidence in the record to support the ALJ's decision and whether the correct legal standards were applied. The ALJ clearly stated good reasons for rejecting the opinion of Dr. Nickels and the Court declines to conduct a *de novo* review and Harris's attempts to discredit a few of the reasons is unavailing.

Therefore, Harris's assignment of error is without merit.

### *RFC For Light Work*

Harris argues that the ALJ's finding that Harris can perform light work is not supported by substantial evidence. (Pl.'s Br. at 9-13.) Harris attempts to support his argument by pointing to contrary opinions from Dr. Wagner and Dr. Nickels, his treating physicians. *Id*. at 9-11.

First, RFC is an indication of an individual's work related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a). As discussed in the preceding section, the ALJ did not err by rejecting the medical opinions of Harris's treating physicians. Therefore, ALJ's failure to incorporate their opinions into his RFC determination cannot result in error.

Harris also cites some of the objective results from his MRI to suggest that he is incapable of light work. *Id*. at 11. However, Harris fails to explain how his MRI is inconsistent with the ALJ's RFC finding.

Harris further contends that the ALJ could not have relied upon the testimony of the ME or Dr. Al-Turk to support his RFC finding. (Pl.'s Br. at 12-13.) Harris ignores the presence of three consultative opinions from Dr. Caldwell, Dr. Klyop, and Dr. DeMuth. "State agency

medical and psychological consultants and other program physicians are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" and ALJs must consider their opinions. of the medical issues in disability claims under the Act." 20 C.F.R. § 416.927(f)(2)(i). All three found described Harris as suffering from limitations consistent with the ability to perform light work and constitute substantial evidence. The ALJ did not mention these physicians in his opinion. Nonetheless, Harris has not cited any case law or regulation suggesting that an ALJ's failure to expressly mention each medical opinion that impacts the ultimate RFC determination results in error.

Therefore, Harris's second assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: January 30, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**